## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LINCOLN ROCK, LLC, a Florida
Limited Liability Company,

      Plaintiff,

v.                                                    Case No: 8:15-cv-1374-T-30JSS

CITY OF TAMPA, a Florida
municipal corporation,

      Defendant.

_____

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Summary Judgment on the Denial of Its Reasonable Accommodation Requests (Dkt. 47) and Defendant's Response in Opposition (Dkt. 56).  The Court, upon review of the motion, response, record evidence, and being otherwise advised in the premises, concludes that the motion must be denied because the record reflects material facts contrary to Plaintiff's position.

## BACKGROUND

This is an action by Plaintiff Lincoln Rock, LLC against Defendant City of Tampa for alleged violations of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") arising from the City's denial of Lincoln Rock's request for a SU-II permit to allow Lincoln Rock to operate a Residential Treatment Facility ("RTF") in a west Tampa neighborhood for persons recovering from alcohol and drug addiction.

Lincoln Rock is a Florida limited liability company that was formed in 2012, and has one member, Bernard Rock. Lincoln Rock was formed for the purpose of establishing a RTF within the City of Tampa to treat those addicted to alcohol or controlled substances. In 2012, Lincoln Rock purchased property that was located in a City of Tampa mixed-use neighborhood with surrounding residential, commercial, and social/club uses (the "Property"). The Property is comprised of two parcels, one on Lincoln Avenue and the other on Lemon Street.

Lincoln Rock purchased the Property with the intention of opening and operating a state licensed RTF for recovering addicts. When purchased, the Property was improved with a residential structure that could accommodate a RTF because it had multiple, self-contained units that could be made available to individuals seeking housing during the course of their treatment. The Property is surrounded by a commercial strip center (to the North), the Sons of Italy Social Club (to the West), and residential homes (to the South and East).

The Property is zoned RO-1. The Tampa City Code provides that certain land uses in the City are not allowed in the RO-1 zoning district. These uses include a clinic, a fraternity/sorority, a restaurant, or a hospital. Other uses not allowed as a matter of right may be allowed upon approval of a SU-II permit by the Tampa City Council. These uses include a RTF, a life care treatment facility, a place of religious assembly, and a public service facility.

2

The Tampa City Code vests the sole authority to approve or deny a SU-II permit with the City Council: "The city council shall be solely responsible for decisions on all applications for S-2 special use permits."   The process of obtaining a SU-II permit includes meeting with professional staff at the City; submitting an application to the City; undergoing review by the City's Development Review Committee ("DRC"); presenting evidence at a public hearing before the City Council; and obtaining approval for the SU-II permit from the City Council.

At the public hearing for a SU-II permit before the City Council, the burden is on the landowner to bring forth sufficient evidence to establish that the proposed use meets the requirements for the use under the Tampa City Code: "It shall be the responsibility of the applicant to present evidence in the form of testimony, exhibits, documents, models, plans and the like to support the application for approval of a special use permit."

The roles of the DRC and the City Council when reviewing an application for a SU-II permit are different.   The DRC is responsible for determining if the landowner's proposal meets certain defined objective criteria as codified in the Tampa City Code.   If the DRC determines that a landowner's proposal meets the objective criterial, the DRC issues a determination that the proposed use is consistent with the criteria.

Following the DRC's review, the City Council holds a public hearing on the application for a SU-II permit.   The City Council is required to apply the criterial in Sec. 27-129, Tampa City Code, to determine whether the proposed use meets specific criteria

3

including that the use ensures the public health, safety and general welfare; the use is compatible with the Comprehensive Plan; and the use is compatible with the surrounding neighborhood.

Lincoln Rock needed to obtain a SU-II permit to operate the RTF on the Property. On February 25, 2013, Lincoln Rock applied for the special use permit with the City. The application sought approval to operate a twenty-one bed RTF. The residents who would have lived at the RTF could not be active in their addiction; rather, they must have been seeking treatment to cure their disease. Such individuals would live together as a group while simultaneously receiving treatment (such as group and individual counseling). This housing arrangement would provide the residents with a therapeutic benefit.

Upon receipt of Lincoln Rock's application, the City's planning and zoning staff reviewed it for completeness. The DRC determined that the proposal met the objective criteria of Sec. 27-132, Tampa City Code. The application was thereafter brought before the City Council for a public hearing. On June 13, 2013, the City Council heard the application. At the public hearing, the members of the City Council expressed a number of concerns regarding the public health, safety and welfare; with compatibility with the Comprehensive Plan; and with compatibility with the surrounding neighborhood. In addition, a number of neighbors expressed concerns. In a vote of six to one, the City Council denied Lincoln Rock's application for the SU-II permit.

Following the denial of the application for the SU-II permit, Lincoln Rock requested that the City reconsider its decision by treating the RTF as a "Congregate Living Facility/Large Group Care Facility."   Under the City's code, such a use is permitted within the RO-1 zoning district applicable to the Property.   On January 13, 2014, the City informed Lincoln Rock that the June 13, 2013 denial of the application was the City's official position on Lincoln Rock's operation of the proposed RTF.

Lincoln Rock sold the Property netting $955,689.   According to Lincoln Rock, after taking into account all of its expenses of approximately $1.1 million, it lost money, and did not realize the value of the Property as entitled for residential drug and alcohol treatment.

Lincoln Rock moves for summary judgment on its claim that the City's denial of the SU-II permit was motivated by an intent to discriminate against persons recovering from alcohol and drug addiction.   In its motion, Lincoln Rock contends that (a) the City's professional staff and the Planning Commission found Lincoln Rock's application "consistent with the City's code" and "recommended approval"; (b) a City employee coordinated neighborhood opposition to the project; (c) the neighborhood opposition to the project expressed at the hearing consisted of "crass statements reflecting discriminatory attitudes"; and (d) the City Council "echoed" the discriminatory sentiments of the neighborhood opposition and acted for the sole purpose of "implement[ing] the discriminatory desires of the neighborhood opposition."

5

Lincoln Rock additionally argues that it is entitled to summary judgment on its claim that the City denied a second accommodation request to use the Lincoln Rock facility as a congregate living facility.[1]

As explained further below, the Court concludes that the record is rife with material disputed facts.  Accordingly, Plaintiff's motion will be denied.

## STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty*

---

[1] The City argues, in part, that this second accommodation request is "new" and Lincoln Rock never pled this claim in the complaint.  The Court will address this issue, which is more fully briefed in the City's motion in limine (Dkt. 61), at that time, so that it has the benefit of a response from Lincoln Rock before ruling.  Accordingly, the Court's ruling herein, i.e., that there are disputed material facts regarding Lincoln Rock's claims, is without prejudice to a potential later ruling that this purported "new" accommodation was never pled and never alleged throughout the course of this litigation.

The Court also notes that Lincoln Rock's complaint (Dkt. 1) alleges discrimination claims under the FHA and the ADA.  The City's motion in limine (Dkt. 61) argues that the complaint does not contain any allegation that Lincoln Rock's application constituted an accommodation request.  Thus, the Court will also determine, once the motions in limine are ripe for disposition, whether Lincoln Rock can proceed at trial on the theory that its application for a SU-II permit constituted a request for a reasonable accommodation.

*Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *See id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *See id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *See Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *See Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *See Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990).

## DISCUSSION

The American with Disabilities Act, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.*, prohibits discrimination based on disability in programs,

services, and activities provided or made available by public entities.  Likewise, the Fair Housing Act of 1968, as amended by the Fair Housing Amendment Act of 1988, 42 U.S.C. § 3061 et *seq.*, prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on disability.  A plaintiff can bring a discrimination claim under either statute for disparate treatment (discriminatory intent) or disparate impact (discriminatory effect).  *See Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1212 (11th Cir. 2008).  Even in the absence of discriminatory intent or effect, however, a defendant will be liable under the ADA and FHA for "failure to make a reasonable accommodation in rules, policies, practices, or services, when such accommodation is necessary to afford a disabled person access to basic goods and services," *see* 42 U.S.C. § 12182(b)(2)(A)(ii), or when such accommodation may be necessary "to afford a disabled person equal opportunity to use and enjoy a dwelling," *see* 42 U.S.C. § 3604(f)(3)(B).

Here, the record is heavily disputed on the issue of whether the City's denial of Lincoln Rock's SU-II permit application was motivated by discriminatory intent.  Adopting the facts in a light most favorable to the City, the non-movant, the record reflects facts that the neighborhood opposition to Lincoln Rock's application reflected legitimate land use concerns.  Specifically, some neighbors were concerned about noise, traffic, and security.  While some neighbors did make comments that could be interpreted as discriminatory, a number of neighbors made legitimate non-discriminatory comments

in opposition to the application.  Moreover, the record is disputed on the issue of whether any discriminatory animus on the part of the neighbors significantly motivated the City Council's vote to reject Lincoln Rock's application.

For example, Councilmember Michael Suarez expressed concern that Lincoln Rock had no standard operating procedure or plan to handle potentially uncontrollable and violent patients.  Councilmember Charles Miranda noted numerous problems with ingress and egress, parking issues, numerous deliveries throughout the day, and a resident population of 21 patients that would make the facility incompatible with the surrounding neighborhood.  Councilmember Lisa Montelione also expressed concerns about the lack of a security plan.  The record reflects that, at the public hearing, Lincoln Rock's representatives were unable to adequately address certain concerns regarding security at the facility.

At the public hearing, Councilmember Yolie Capin asked for information regarding staffing; patient-to-staff ratios; crisis intervention protocol; and security, and received vague answers from Lincoln Rock's representatives in response.

In sum, the record reflects that the City Council expressed legitimate non-discriminatory concerns regarding the health, safety, general welfare, and the compatibility of the proposed facility with the surrounding neighborhood.

The Court also concludes that the record is disputed with respect to any request for a reasonable accommodation.[2]  It does not appear that Lincoln Rock requested a change or variance of a City Code, rule, or zoning ordinance as a "reasonable accommodation" to allow Lincoln Rock to operate.  Moreover, to the extent it did, the record is disputed on the issue of whether any accommodation request was "reasonable," in light of the numerous factual issues regarding whether the proposed RTF was complimentary to the surrounding land use.  *See Schwarz*, 544 F.3d at 1221 (noting that "[t]he basic purpose of zoning is to bring complementary land uses together, while separating incompatible ones. Thus, ordering a municipality to waive a zoning rule ordinarily would cause a fundamental alteration of its zoning scheme if the proposed use was incompatible with surrounding land uses.") (internal quotations and citations omitted).  The City presents evidence that Lincoln Rock failed to adequately address concerns about health, safety, and general welfare.  Lincoln Rock's argument that its RTF would have been compatible with the neighborhood and an "appropriate use for the neighborhood" is disputed. Accordingly, Lincoln Rock's claims must proceed to trial.

---

[2] As stated above in footnote 1, this assumes that Lincoln Rock has sufficiently pled and maintained such a claim in this litigation.

It is therefore ORDERED and ADJUDGED that Plaintiff's Motion for Summary Judgment on the Denial of Its Reasonable Accommodation Requests (Dkt. 47) is denied.

DONE and ORDERED in Tampa, Florida on October 27, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record