# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LINCOLN ROCK, LLC, a Florida
Limited Liability Company,

    Plaintiff,

v.                                            Case No: 8:15-cv-1374-T-30JSS

CITY OF TAMPA, a Florida
municipal corporation,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon the parties' Motions in Limine (Dkts. 60, 61) and their respective Responses thereto (Dkts. 66, 67). The Court, upon review of the motions, responses, and being otherwise advised in the premises, concludes that Lincoln Rock's motion (Dkt. 60) should be denied and the City's motion (Dkt. 61) should be granted in part and denied in part.

### Lincoln Rock's Motion in Limine

**I.  Evidence Regarding Lack of Permits**

Lincoln Rock argues that any evidence regarding Lincoln Rock's failure to obtain certain permits to perform construction work[1] on the subject property is irrelevant and, to the extent it is relevant, unduly prejudicial. Lincoln Rock contends that any failure to

---

[1] Lincoln Rock hired Gene Costa Construction to renovate the subject property, which amounted to approximately $254,055.18 in construction work. Eugene Costa, the general contractor on the project, testified that he did not obtain any building permits for the renovations.

have the appropriate construction permits has no relevance to the legal issues in this case, i.e., whether the City violated the FHA and the ADA when it denied Lincoln Rock's application for a special use permit. Lincoln Rock also argues that any lack of permits does not impact the damages in this case because the City's two damages experts did not consider the lack of permits in their damages calculations.

The City counters that its expert real estate appraiser, Lee F. Pallardy, III, MAI, investigated whether the renovations to the Lincoln Rock property were permitted and inspected by the City. Pallardy noted in his expert report that "a buyer of property with non-permitted construction and renovation work inherits a lot of risk and liability plus the additional time and thus costs associated with the architect and engineers getting the City of Tampa to approve and permit the work that had been previously completed." (Dkt. 66-7 at 63).

After a review of Pallardy's expert report, the Court concludes that Lincoln Rock's failure to obtain the relevant permits for the renovations completed by Gene Costa Construction is relevant to the value of the Lincoln Rock property. Accordingly, Lincoln Rock's motion in limine is denied with respect to this issue.

## II.     Evidence Regarding Noise and Traffic

Lincoln Rock argues that the City should not be able to present any evidence of "noise and traffic that could have emanated form the Property if used as a Residential Treatment Facility." This request is denied. As the City points out, the record is rife with

2

evidence that neighbors and members of the City Council were concerned about the amount of traffic and noise that the proposed RTF would generate. This Court noted in its Order denying Lincoln Rock's motion for summary judgment that " . . . some neighbors were concerned about noise, traffic, and security." (Dkt. 65). Lincoln Rock's motion on this issue is denied.

## THE CITY'S MOTION IN LIMINE

### I.     David Depew's Expert Opinion

Lincoln Rock has offered David W. DePew as an expert in this case. DePew's area of expertise is in the fields of land use and planning. The City moves to exclude DePew's opinion in part—specifically, the City moves to exclude DePew's conclusion that the City Council denied Lincoln Rock's special use permit for the alleged discriminatory reasons articulated by the neighbors at the City Council hearing. The Court agrees that DePew's opinion on this matter is speculative. Indeed, as this Court earlier held with respect to the City's expert, Mary Ulrey, "Ulrey has no first-hand knowledge as to what prompted the City's denial of Lincoln Rock's request for a SU-II permit." (Dkt. 71). Similarly, DePew has no first-hand knowledge about what prompted the City Council to deny Lincoln Rock's application. DePew is not competent to testify about the motivations of the seven members of the City Council. Accordingly, the City's motion is granted on this issue.

## II.     Requests for Reasonable Accommodation

Lincoln Rock contends that the City denied it two requests for a reasonable accommodation under the FHA and the ADA.  Lincoln Rock claims that it made a request for a reasonable accommodation to operate as a congregate living facility after the City Council denied its application for a special use permit.  Lincoln Rock also asserts that the application for the special use permit itself constituted a request for a reasonable accommodation.

Turning to the first issue, the City argues that its denial of Lincoln Rock's request to operate as a congregate living facility was never pled in this case and that Lincoln Rock raised this claim for the first time in its motion for summary judgment.[2]  Lincoln Rock counters that it alleged generally in the complaint that the City failed "to make reasonable accommodations in the City's zoning code and its application to afford Lincoln Rock and the Residents an equal opportunity to use and enjoy the Property." (Dkt. 1).  And that, during discovery, the City's denial of Lincoln Rock's request to allow the property to operate as a congregate living facility was discussed.

The Court concludes that, although this issue was clearly not underscored in the complaint or a large focus during discovery, the denial of Lincoln Rock's request to operate as a congregate living facility was discussed during the deposition of Lincoln

---

[2] The Court deferred ruling on this issue at the summary judgment stage because the issue had not been fully briefed at that time.  The Court stated that it would address the issue of whether Lincoln Rock ever pled this claim after the Court received a response from Lincoln Rock on this issue. (Dkt. 65).

Rock's land use lawyer and was also acknowledged by Abbey Feeley, the City's land use planner.  In other words, this claim could not have come as a complete surprise to the City.  And the Court sees no prejudice to the City to allow this claim to proceed in this case.  Accordingly, the City's motion is denied with respect to this issue.

Turning to the second issue, the City argues that, as a matter of law, Lincoln Rock's application itself cannot qualify as a reasonable accommodation request because Lincoln Rock did not request a change or variance of a city code or ordinance as a reasonable accommodation to allow Lincoln Rock to operate.  The Court agrees that the thrust of this case is whether the City applied an otherwise valid law or policy in a discriminatory manner in violation of the FHA and the ADA.  There is simply no evidence that the application itself qualified as a reasonable accommodation request.  Courts, including the Eleventh Circuit, have consistently held that to state a claim for denial of a "reasonable accommodation," the plaintiff must have sought a change or variance to an ordinance or law as an accommodation for a disability.  *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1205, 1218 (11th Cir. 2008) (plaintiff sued because the City of Treasure Island refused to accommodate owner of halfway house by relaxing zoning ordinance that limited occupancy and turnover rates); *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 196 (5th Cir. 2000) (plaintiff sought an accommodation of a variance to the local zoning laws to allow plaintiff to operate a group home for five unrelated individuals); *Oconomowoc Residential Programs, Inc. v. City of*

*Milwaukee*, 300 F.3d 775, 777 (7th Cir. 2002) (plaintiff sought a zoning variance to the requirement that group homes for impaired adults must not be less than 2,500 feet of another similar group home); *Bangerter v. Orem City Corp.*, 46 F.3d 1491 (10th Cir. 1995).

*Bangerter* is particularly instructive on the issue of whether Lincoln Rock's application itself constituted a request for a reasonable accommodation. In *Bangerter*, the plaintiff alleged the city had imposed certain conditions, which were required by city ordinance and state law, on a permit for a group home for the mentally ill. One of these conditions was a state law and city ordinance that required 24-hour supervision at group homes for the mentally ill. In dismissing the reasonable accommodation claim, the Tenth Circuit stated that the plaintiff did not challenge "an ordinance that is generally applicable, since it is specifically directed at group homes for the handicapped. Under these facts, we conclude that the claim for 'reasonable accommodation' is simply inappropriate and the district court correctly dismissed that claim." *Id.* at 1502. The Tenth Circuit also noted that the claim was really a disparate treatment claim requiring a showing of intentional discrimination. *Id.* at 1500.

Here, Lincoln Rock's application for a special use permit did not seek reasonable accommodation of a general rule to make it less difficult for the handicapped or disabled. Also, the record is undisputed that, with respect to the application itself, Lincoln Rock never requested a change or variance of a City Code or ordinance as a "reasonable

6

accommodation" to allow Lincoln Rock to operate.[3]  In contrast, Lincoln Rock may argue that its subsequent request (after the City denied its special use application) to operate as a congregate living facility, may have qualified as a requested change or variance to the city code.  Accordingly, the City's motion in limine is granted to the extent that Lincoln Rock is precluded from arguing at trial that the application itself qualified as a request for a reasonable accommodation.

### III.     References that the City's Professional Staff "Approved" the Application

The City states that Lincoln Rock has alleged numerous times in this case that the City's professional staff "approved" the Lincoln Rock application and "recommended" that the City Council approve it.  The City argues that the approval process is complicated and that Tampa City Code vests the sole authority to approve or deny a special permit with the City Council.  Thus, any references to the City's professional staff "approving" the application would mislead and confuse the jury because only the City Council had the ability to approve the application.

Lincoln Rock counters that the City's staff and Planning Commission staff stated in their written report that they were making a "recommendation" to the City Council to approve the application.  Lincoln Rock does not dispute that the final determination as to whether or not an application is approved lies with the City Council.  However, it should

---

[3] Indeed, it seems axiomatic that a person needs some kind of notice that an accommodation is being requested—with respect to the application itself there was no such notice provided to the City.

be able to argue at trial that the City's staff and Planning Commission recommended approval of the application. The Court agrees with Lincoln Rock and denies the City's motion on this issue; although Lincoln Rock cannot state that the City's staff approved the application, Lincoln Rock may assert that approval was "recommended."

## IV. Mary Bryan E-mails

The City requests that any e-mails between Mary Bryan, a City employee, and a neighborhood resident using the name "Cookie" should be excluded until an evidentiary predicate is established. The e-mails appear to show Bryan assisting Cookie through the process of presenting testimony to the City Council on the Lincoln Rock application. The City argues the e-mails are not relevant and, regardless, are hearsay.

Lincoln Rock argues that the e-mails show that Bryan, the Legislative Aide to Councilmember Charlie Miranda, encouraged Cookie to oppose Lincoln Rock's application. The Court agrees that the e-mails are relevant to the extent that they may show the efforts of the neighborhood to oppose the application with the assistance of Miranda's legislative aide.[4]

Whether the e-mails are admissible is a separate issue that this Court need not decide now. Specifically, without testimony and evidence to provide factual context, a

---

[4] Of course, as the City has pointed out, Bryan testified that it was part of her job to assist members of the public with their support or opposition to any matter that comes before the City Council.

8

ruling on potential hearsay issues would be premature. Thus, these arguments are denied without prejudice to address them during the trial by making the appropriate objection.

## V.     Notes Taken by Councilmember Lisa Montelione at the Hearing

Montelione was the one council member who did not vote to deny Lincoln Rock's application. During the public hearing on the application, Montelione made personal handwritten notes. For example, she wrote "NIMBY" and "If not here; where." The City argues that these notes are inadmissible. The Court agrees. Montelione's notes would not qualify as a party admission under Federal Rule of Evidence 801(d)(2) because they were her personal observations and they were made for her own personal use. They also do not qualify as a present sense impression under Federal Rule of Evidence 803(1). Of course, Lincoln Rock could always use them to impeach Montelione, assuming that the requirements for impeachment are satisfied during her testimony. Accordingly, the City's motion on this issue is granted.

## VI.    Any Reference to a "Conspiracy" by the City to Deny the Application

The City argues that throughout this litigation, Lincoln Rock has continually referred to a "conspiracy" by the City to deny its application. The City contends that there is no evidence of any conspiracy and the use of this term would mislead the jury and confuse the legal issues in this case. Lincoln Rock states in its response that it does not intend to use the word "conspiracy" at trial. Thus, the City's motion is granted on this issue.

It is therefore **ORDERED and ADJUDGED** that, for the reasons explained herein:

1. Lincoln Rock's Motion in Limine (Dkt. 60) is denied.

2. The City's Motion in Limine (Dkt. 61) is granted in part and denied in part.

**DONE** and **ORDERED** in Tampa, Florida on December 1, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record